FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2007 APR 17  A 11: 46

Civil Action No.

U.S. DISTRICT COURT
DISTRICT OF MASS.

LIDIA RODRIGUES, on behalf of herself )
and all others similarly situated, )
              Plaintiff )
VS. )
 )
MENU FOODS INC., MENU )
FOODS MIDWEST CORPORATION, )
MENU FOODS INCOME FUND, and )
MENU FOODS LIMITED, )
          Defendants )
_____ )

## CASS ACTION COMPLAINT
## JURY TRIAL DEMANDED

Plaintiff, Lidia Rodrigues, individually and on behalf of all others similarly situated,

by and through her undersigned counsel, hereby sues Defendants Menu Foods Inc., Menu

Foods Midwest Corporation, Menu Foods Income Fund, and Menu Foods Limited

(collectively, "Defendants") pursuant to Rule 23 of the Federal rules of Civil Procedure, for

breach of express warranty, breach of implied warranty of merchantability, negligence, and

unjust enrichment, and seeks damages, attorneys' fees, and costs on behalf of herself and

all others similarly situated (the "Class"), and upon information and belief, alleges as follows:

## NATURE OF THE ACTION

1.  Plaintiff brings this action for breach of express warranty breach of implied

warranty of merchantability, negligence, and unjust enrichment to redress the harms

resulting from the manufacture, production, and sale by Defendants of dog and cat food

marketed under over 90 brand names.

1

Rodrigues v. Menu Foods Inc. et al      Doc. 1

2. Defendants manufacture and sell over 90 brands of pet food for cats and dogs, including popular labels like lams and Eukanuba and private label brands sold at large retail chains including Wal-Mart. On March 16, 2007, the Menu Foods Income Fund issued a press release announcing the recall of 60 million cans of contaminated dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufacture at two of Menu Foods Limited's U.S. manufacturing facilities - Menu Foods, Inc., and Menu Foods Midwest Corporation, located in New Jersey and Kansas, respectively.

3. The recalled pet food that Plaintiff and Class members purchased and fed to their pets caused their pets to become ill through kidney disease, requiring veterinarians visits, medications, hospitalizations and, in some cases, burials of those pets that died due to renal failure caused by the contaminated pet food. Many pets that consumed the recalled food now require ongoing monitoring of their health to ascertain the extent of the damage to their kidneys.

4. Plaintiff makes the following allegations, except as to the allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel, which included, inter alia, review and analysis of Defendants' website, press releases, news articles, and pleadings filed in other suits.

## PARTIES

5. Plaintiff Lidia Rodrigues resides in New Bedford, Massachusetts. During March 2007, Plaintiff Rodrigues purchased and fed her cats, Fluffy, Oracle, Baby and Munchkin, Special Kitty Select Gourmet Cat Food that was manufactured by Defendants during the Class Period. On or about March 28, 2007, Rodrigues' cats became ill and demonstrated

2

signs of lethargy and lack of appetite. Plaintiff's cats also had watery stools following her ingestion of Defendants' pet foods. On March 29, 2007, Fluffy died. The other cats survived but have suffered greatly resulting in the need for lengthy and costly veterinarian care. Because of the short period of time between when Fluffy first exhibited signs of illness and her untimely death, Rodrigues was not able to obtain medical assistance for Fluffy. In addition to the cost of purchasing the contaminated food, Plaintiff Rodrigues incurred economic costs in connection with her cat's death.

6. Defendant Menu Foods Inc., ("MFI") is a New Jersey corporation, with its headquarters at 9130 Griffith Mogan Lane, Pennsauken, New Jersey 08110. MFI manufactures pet food for distribution in the United States. MFI has done business throughout the United States and in the State of Massachusetts at all times relevant to this lawsuit. MFI is a wholly-owned subsidiary of Menu Foods Limited, and is ultimately owned or controlled by Menu Foods Income Fund, an unincorporated company with its principal place of business in the Province of Ontario, Canada. Some of Defendant MFI's high managerial officers and agents with substantial authority are also high managerial officers or agents of Menu Foods Income Fund.

7. Menu Foods Limited ("MFL") is a Canadian corporation located at 8 Falconer Drive, Mississauga, ON, L5N 1B1 and has done business throughout the United States and in the Sate of Massachusetts at all times relevant to this lawsuit. MFL is the parent company of, and wholly-owns, both MFI and MFMC, two of MFL's manufacturing facilities in the United States.

8. Defendant Menu Foods Midwest Corporation ("MFMC") is a Delaware corporation, with its headquarters at P.O. Box 1046, 1400 East Logan Avenue, Emporia,

KS 66801. MFMC has done business throughout the United States and in the State of Massachusetts at all times relevant to this lawsuit. MFMC is a wholly-owned subsidiary of MFL and manufactures pet food for distribution in the United States.

9. Defendant Menu Foods Income Fund ("MFIF") is an unincorporated company with its principal place of business in the Providence of Ontario, Canada. MFIF manufactured the pet food at issue in this action. Defendants MFL and MFIF purport to be the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other retail and wholesale outlets. In 2006, MFIF produced more than on billion containers of pet food.

10. The events complained of occurred throughout the United States and in the State of Massachusetts.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this class action under 28 U.S.C. §1332(d)(2), (d) (5B), )d)(6) because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least Plaintiff and Defendants are citizens of different states.

12. Venue in this Court is proper in that Defendants transacted business in this county and the conduct complained of occurred in this district, as well as elsewhere in the State of Massachusetts.

## FACTUAL ALLEGATIONS

13. At least from December 3, 2006 through March 6, 2007, Defendants failed to adhere to proper safety standards and failed to ensure that the pet food they manufactured

4

and sold was free from contamination.

14.    On March 16, 2007, Defendant MFIF, the parent company of MFL, issued a press release whereby it announced the recall of a portion of the dog and cat food it manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" stle pet foods in cans and pouches manufactured at two of MFL's facilities - MFI located in Pennsauken, New Jersey and MFMC in Emporia, Kansas. Reportedly, 60 million cans and pouches of the pet food were recalled.

15.    As of March 2007, the recall pet foods included the following:

Recalled Dog Foods: Americas Choice, Preferred Pets; Authority Award; Best Choice; Big Bet; Big Red; Bloom; Cadillac; Companion; Demoulas Market Basket; Eukanuba; Food lion; Giant Companiion; Great Choice; Hannaford; Hill Country Fare; Hy-Vee; Iams; Laura Lynn; Loving Meals; Meijers Main Choice; Mighty Dog Pouch; Mixables; Nutriplan; Nutro Max; Nutro Natural Choice; Nutra Ultra; Nutro; Ol'Roy Canada; Ol'Roy US; Paws; Pet Essentials; Pet Pride - Good n Meaty; Presidents Choice; Price Chopper; Priority Canada; Priority US; Publix; Roche Brothers; Save-A-Lot Choice Morsels; Schnucks; Shep Dog; Springsfield Prize; Sprout; Stater Brothers; Stop & Shop Companion; Tops Companion; Wegmans Bruiser; Weis Total Pet; Western Family US; White Rose; Winn Dixie; and Your Pet.

Recalled Cat Food: Americas Choice, Preferred Pets; Authority; Best Choice; Companion Compliments; Demoulas market Basket; Eukanuba; Fine Feline Cat; Food Lion; Foodtown; Giant Companion; Hannaford; Hill Country Fare; Hy-Vee; Iams; Laura Lynn; Lil' Red; Loving Meals; Meijer's Main Choice; Nutriplan; Nutro Max Gourment Classics; Nutro Natural Choice; Paws; Pet Pride; Presidents Choice; Price Chopper; Priority US; Save-A-Lot Special Blend; Schnucks; Science Diet Feline Savory Cuts Cans; Sophistacat; Special Kitty Canada; Special Kitty US; Springfield Prize; Sprout; Stop & Shop Companion; Tops Companion; Wegmans; Weis Total Pet; Western Family US; White Rose; and Winn Dixie.

16.    The recalled pet food was sold under more than 90 brand names, including popular labels like Iams and Eukanuba and private label sold at large retaile chains. Retailers who sold the contaminated products included, among others, Ahold USA, Kroger

Co., Safeway, Wal-Mart, Pet Smart, and Pet Value.

17.    MFL acknowledged receiving complaints in the United States which raised concern about pet food manufactured since early December 2006, and its impact on the renal health of the pets consuming the products. MFL discovered that timing of the production associated with these complaints coincided with the introduction of an ingredient from a new supplier.

18.  Stephen Sundlof, the Food and Drug Administration's (FDA) chief veterinarian, said that Menu Foods began its own test of its pet food beginning February 27, 2007 in approximately 40 to 50 pets.  Within a few days, animals began showing signs of sickness. In early March 2007, at least seven animals reportedly died.

19.  Menu Foods announced its recall weeks later, on March 16, 2007.

20.    The FDA has reported that it received numerous calls and complaints form owners of such and deceased pets, who flooded phone lines at State FDA offices, as well as calls from veterinarians and pet food companies.  See *Los Angeles Times*, March 20, 2007.

21.  To date, there are 50 confirmed pet deaths.  The FDA expects the death toll to rise.

22.  The FDA said that its investigation is focused on problems with aminopterin in the wheat gluten used by MFL, which MFL claimed had been coming from a new supplier. Wheat gluten is a source of protein and issued to thicken the grave in the pet food.

23.  On March 30, 2007, the FDA announced that Defendants' recalled pet foods also contained melamine, a chemical used to make plastics.  Researches found melamine (used to produce plastic kitchen wares and used in Asia as a fertilizer) in the urine of sick

6

cats, as well as in the kidney of one cat that died after eating the Menu Foods' wet food. The commissioner of the New York State Department of Agriculture and Markets noted that neither aminopterin nor melamine should be in pet food.

24. On March 30, 2007, MFIF confirmed that on March 6, 2007 it had ceased using the Chinese company that supplied it with the contaminated wheat gluten.

## PLAINTIFF'S INJURIES

25. Plaintiff Rodrigues owned a cat, Fluffy. Plaintiff Rodrigues fed her cat, Fluffy, Special Kitty gourmet cat food with tuna in sauce that was manufactured by Defendants during the Class Period and is now listed on the Company's recall list as a contaminated product.

26. Until ingesting the contaminated pet food, Fluffy, was in very good health and had no medical conditions.

27. On or about March 28, 2007, Rodrigues cat became ill and demonstrated signs of lethargy and lack of appetite. Rodrigues' cat also had watery stools following her ingestion of Defendants' pet foods.

28. On March 29, 2007, Fluffy died. Because of the short period of time between when Fluffy first exhibited signs of illness and her untimely death, Rodrigues was not able to obtain medical assistance for Fluffy.

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated.

30. The class which Plaintiff seeks to represent are composed of:

All persons in the United States who have incurred costs as a result of their pets

7

becoming ill or passing away from ingesting any of the pet food brands manufactured by Defendants during the period commencing December 3, 2006, and ending March 6, 2007 (the "Class Period") that were recalled by Defendants.

31. The class is composed of thousands, and possibly millions, of persons, the joinder of whom is not practicable. The disposition of their claims in a class action will benefit both the parties and the Court. It has been estimated that thousands of cats and dogs have become ill and hundreds have died so far from ingestion of the contaminated pet food throughout the United States during the Class Period, and thus the Class is sufficiently numerous to make joinder impracticable, if riot impossible.

32. There are questions of fact and law which are common to all members of the class, including, inter alia, the following:

a. Whether Defendants breached any express or implied warranties when they manufactured and sold the contaminated pet food.

b. Whether Defendants negligently manufactured and sold the contaminated pet food;

c. Whether Defendants violated the Massachusetts Consumer Protection Statute.

d. Whether the Class has been damaged, and if so, the appropriate measure of damages including the nature of the equitable relief to which the class is entitled.

33. The above common issues of fact and law predominate over any arguable individualized issues.

34. Plaintiff's claims are typical of the claims of the other members of the class

8

because Plaintiff's and all of the Class members' damages arise from and were caused by having purchased and fed the contaminated pet food to their pets. As a result, the evidence and the legal theories regarding defendants' alleged wrongful conduct are identical for Plaintiff and all of the Class members.

35.   Plaintiff will fairly and adequately protect the interests of the members of the Class, and Plaintiff has no interest which are contrary to or in conflict with those of the Class they seek to represent. Plaintiff has retained competent counsel experienced in class action litigation to further ensure such protection and to prosecute this action vigorously.

36.   The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the party opposing the class and would lead to repetitious trials of the numerous common questions of facts and law. Plaintiff does not believe that any difficulty will encountered in the management of this litigation that would preclude its maintenance as a class action. Plaintiff believes and therefore avers that claims are small in relation to the costs of an individual suit, and a class action is the only proceeding pursuant to which Class members can, as a practical matter, recover. As a result a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

37.   Proper and sufficient notice of this action may be provided to the Class members through notice published in appropriate publications.

38.   Plaintiff and the members of the Class have suffered irreparable harm and damages as a result of the Defendants' wrongful conduct as alleged herein. Absent

9

representative action, Plaintiff and the members of the Class will continue to suffer losses, thereby allowing these violations of law to proceed without remedy.

## COUNT I

## BREACH OF EXPRESS WARRANTY

39.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

40.    Defendants expressly warranted that the contaminated brands of pet food were, in fact, ingestible food that was safe for consumption by dogs and cats.

41.    In addition, Defendants made numerous express warranties about the quality of its food and its manufacturing facilities.  For example, Menu Foods claims that it "manufacture[s] the private-label wet pet-food industry's most comprehensive product program with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

42.    Members of the Class were induced by Defendants' labeling, advertising and marketing the contaminated brands of pet food as "food" to rely upon said express warranty, and did so rely in purchasing the contaminated brands of pet food and feeding them to their pets.

43.    In reliance on Defendants' untrue warranties, Plaintiff and the Class purchased the contaminated pet food and fed that food to their pets.

44.    Plaintiff and members of the Class sustained damages as a proximate result of said breach of warranty.

10

## COUNT II

## BREACH OF IMPLIED WARRANTY

## OF MERCHANT ABILITY

45.   Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

46.   Defendants are merchants pursuant to sections 2-104 and 2-314 of the Uniform Commercial Code with respect to pet foods.

47.   Through Defendants' marketing, labeling, and sales, Defendants impliedly warranted that the contaminated pet food, which was sold to Plaintiff and Class members and fed to their pets, was fit for the ordinary purpose for which it was intended, namely, to safely feed and nourish pets without any resulting negative health effects, pursuant to section 2-314 of the Uniform Commercial Code.

48.   Through Defendants' marketing, labeling, and sales, Defendants knew that Plaintiff and Class members would purchase the contaminated pet food at issue for the ordinary purpose of feeding their pets.

49.   Defendants manufactured, labeled, advertised, sold, and distributed the contaminated pet foods at issue for the ordinary purpose for which it was purchased by Plaintiff.

50.   Plaintiff and Class members purchased and used the contaminated pet foods for the ordinary purposes for which such goods are sold, namely feeding them to their pets.

51.   Plaintiff and Class members relied upon Defendants' representations and claims in purchasing the contaminated pet foods.

11

52. The contaminated pet foods purchased by Plaintiff and Class members were unfit for their ordinary purpose when sold. In fact, such pet foods were contaminated and caused severe illness and/or death of the pets that consumed them. Therefore, Defendants breached the implied warranty of merchantability in the sale of the contaminated pet foods at issue.

53. Plaintiff and members of the Class sustained damages as a proximate result of said breach of warranty.

## COUNT III

## NEGLIGENCE

54. Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

55. Defendants owed a duty to pet owners who purchased its products to ensure that their pet food was safe for pets to consume and free from contamination, such that no pets consuming these products would be injured or die as a result of such consumption.

56. Defendants breached said duty as described herein above when they failed to adhere to proper safety standards and failed to properly ensure the safety of their products when they sold contaminated pet food, proximately causing damage to Plaintiff and members of the Class.

57. As a proximate result of the Defendants' conduct described herein, Plaintiff and members of the Class have suffered damages as a result and continue to suffer damages as a result of the contamination of Defendants' pet food.

## COUNT IV

## UNJUST ENRICHMENT

58. Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

59. As a direct, proximate, and foreseeable result of Defendants' acts and otherwise wrongful conduct, Plaintiff suffered damages. Defendants profited and benefitted from the sale of their pet food, even as the pet food caused Plaintiff to incur damages.

60. Defendants have voluntarily accepted and retained these profits and benefits, derived from consumers, including Plaintiff, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, consumers, including Plaintiff, were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants or that reasonable consumers expected. Plaintiff purchased pet food that she expected would be safe and healthy for her pet and instead has had to now endure the illness of her beloved pet.

61. By virtue of the wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of the Plaintiff who is entitled to, and hereby seeks, the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues triable by right before a jury.

13

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.  That this Court certify this action as a Class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and appoint Plaintiff and her counsel to represent the Class;

2.  That this Court enter judgment and award damages in favor of Plaintiff and the Class, and against Defendants under the theories alleged herein;

3.  That this Court award Plaintiff all attorneys' fees, expenses and costs of this suit;

4.  That this Court award Plaintiff pre judgment and post judgment interest at the maximum rate allowable by law, compounded daily; and

5.  That this Court grant such other, further, and different relief that the Court deems necessary, just, and proper.

6.  That this Court find that the cats are "special property" that have intrinsic value beyond their market worth.

By her Attorneys,
BRIAN CUNHA & ASSOCIATES

_____
Brian R. Cunha, Esq.
311 Pine Street
Fall River, MA 02720
Tel: (508) 675-9500

14